AYOTTE, RESPONDENT, *v.* NADEAU, APPELLANT.

(No. 2,101.)

(Submitted May 3, 1905.    Decided June 17, 1905.)

*Tenants in Common—Rights Inter Sese—Statutes—Construction—Accounting—Complaint—Sufficiency—Action for Rent —Pleadings—Theory of Case—Burden of Proof—Statute of Frauds.*

Appeal—Questions for Review.
  1.  Rulings of the trial court made prior to trial are reviewable on appeal from the judgment.

Pleadings—Sufficiency—Appeal—Question for Review.
  2.  Where, at the outset of the trial, the sufficiency of a pleading is challenged by objection to the introduction of evidence by the opposing party, on the ground of want of substantial allegations therein, the question thus presented is reviewable on appeal from an order denying a new trial.

Complaint—Improper Joinder of Causes of Action—Waiver.
  3.  Where defendant failed to object to a complaint which blended two causes of action, contrary to the provisions of Code of .Civil Procedure, section 672, the defect will be deemed to have been waived by such failure to object.

Tenants in Common—Rights *Inter Sese*—Common-law Rule.
  4.  Neither the common-law rule, that, where one cotenant occupies the common property and takes the whole profit, the other has no cause of action against him unless the acts of the occupant amount to an ouster, or unless the occupancy was under an agreement by which the occupant became bailiff for the other as to his share, nor the rule laid down by the statute of Anne (4 & 5 Anne, chapter 16), that where one cotenant receives more than his share of the rents and profits of the common property, he is liable to account to the other therefor, is in force in Montana.

Tenants in Common—Statutes—Construction.
  5.  The Act of 1899 (Session Laws 1899, p. 134), amending Code of Civil Procedure, 1895, section 592, in the form of limitations and provisos affecting the substantial rights of tenants in common in the common property, is inapplicable to a cotenancy created prior to its passage.

Actions—Character—How Determined.
  6.  The character of an action—whether one at law or in equity—must be determined by the kind of relief which the pleadings of a party entitle him to.

Tenants in Common—Action by One Against the Other—When Maintainable.
  7.  Under Code of Civil Procedure, section 592, an action for the reasonable value of the use and occupation of a city lot is maintainable by one cotenant against another as to the net profits resulting from such occupation, whether they be the result of rents received from third persons holding under one cotenant, or from a profitable use of the common property by the cotenant himself.

Accounting—Complaint—Sufficiency.
  8.  A complaint containing no allegation of a demand for a general accounting and a refusal by defendant, states no cause of action for an accounting.

Tenants in Common—Use of Property—Contract.
  9.  Tenants in common may contract with reference to the use of the common property, since their respective interests in it partake in great measure of estates in severalty.

Tenants in Common—Contracts—Consideration.
  10.  The exclusive use of a building on the common property by one cotenant is a sufficient consideration to support his promise to the other to pay rent therefor at a stipulated rate.

Tenants in Common—Action for Rents—Complaint—Sufficiency.

11.  A complaint by a tenant in common against his cotenant alleged the making of a contract between the plaintiff and defendant whereby the latter was to erect a building on the common property at his own expense, and that, when the rents received by defendant were equal to one-half the cost of the building, the rents were to be equally divided between them, and that the rents received by the defendant therefrom were in excess of one-half the cost of the building, but that the defendant refused to account to plaintiff for his share. *Held*, that the complaint stated a cause of action for rents due under the contract, in view of Code of Civil Procedure, section 592, providing that, if any person shall assume and exercise exclusive ownership over any property held in common, the party aggrieved shall have his action for the injury.

Action by One Tenant in Common Against the Other—Rent—Scope of Action.

12.  In an action at law by one cotenant against another for rents collected and retained by the defendant for the use of a building on the common property, the interests of the parties in the building itself cannot be adjudicated, an action in ejectment being required for that purpose.

Theory of Case—Appeal—Instructions.

13.  Where a cause was tried in the district court as one at law, a general verdict had and a judgment entered for plaintiff, he, on defendant's appeal, cannot change his ground in the supreme court and insist that the cause was one in equity, and that therefore error in giving or refusing instructions is not ground for reversal.

Tenants in Common—Action for Rents—Burden of Proof—Instructions.

14.  In an action by a tenant in common against his cotenant for rents alleged to be due to the plaintiff under a contract for the erection of a building at defendant's expense, and an equal division of rents after defendant was reimbursed by receipts of rent therefrom to the extent of one-half the cost, the burden was on plaintiff to show that defendant had been so reimbursed, and an instruction casting the burden upon defendant to show by a clear preponderance of the evidence that the building cost more than the amount alleged by plaintiff was prejudicial error.

Tenants in Common—Action for Rents—Contract—Statute of Frauds.

15.  A contract between tenants in common for the erection of a house on the common property by one at his own expense, and requiring him to make an equal division of the rents between them when the rents received equaled one-half the cost, is not within Civil Code, section 2340, providing that certain contracts for the sale of personal property shall not be enforceable unless in writing, nor within section 2342 of the same code, making the same provision in relation to contracts for the sale of land or any interest therein.

Tenants in Common—Action for Rents—Statute of Frauds.

16.  Where a contract between plaintiff and defendant as tenants in common provided for the erection of a house on the common property by defendant at his own expense, requiring him to make an equal division of the rents between them when the rents received equaled one-half the cost, and there was an immediate performance by plaintiff by his surrender to defendant of the entire control of the property, with all revenues to be derived from it, until the stipulated rent should pay for the erection of the building, the contract was enforceable irrespective of the Civil Code, section 2185, subdivision 1,

.   which provides that an agreement not to be performed within a year is invalid unless in writing, such subdivision 1 being applicable to those contracts only which *by their terms* are not to be performed within one year by *either* party.

Tenants in Common—Action for Rents—Contracts—Statute of Frauds.
   17.  A contract between tenants in common for the erection of a house on the common property by one of them at his own expense, and requiring him to make an equal division of the rents when the rents received equaled one-half the cost, is not a contract of leasing within Civil Code, section 2185, subdivision 5, providing that an agreement for the leasing of real property for a longer period than one year is invalid unless in writing.

*Appeal from District Court, Silver Bow County; E. W. Harney, Judge.*

ACTION by Samuel Ayotte against Peter Nadeau.    From an order denying a new trial, defendant appeals.    Reversed.

STATEMENT OF THE CASE, BY THE JUSTICE DELIVERING THE OPINION.

This action was brought by plaintiff to recover a judgment declaring him entitled to an undivided one-half interest in a certain building erected by the defendant upon a portion of a parcel or lot of land owned by the parties as tenants in common, and situate in Butte, Silver Bow county, as well as one-half of the rents already accrued and to accrue for its use. Judgment is also sought for one-half of the reasonable value of the use and occupation of other portions of the common property by the defendant and his tenants.    The common property is described as a lot, one hundred and seventy-two by fifty-six feet, fronting on the south side of Park street in said city.

. It is alleged, in substance, that on or about January 1, 1897, the defendant entered upon the northerly portion of said lot, and constructed a frame building thereon, to be used for the purpose of conducting a saloon business, and that it has been and still is used for that purpose; that it was erected by the defendant under an agreement between the plaintiff and defendant, by the terms of which the defendant agreed that plaintiff should receive a credit of $10 per month for the use of his interest in the ground occupied by the building, to be

applied on the cost of its construction, and that, whenever the sum of such credits should equal one-half of the cost of construction, from that time the plaintiff should receive one-half of the rent of the building and be the owner of a half interest therein; that the cost of construction did not exceed $500; that since February 1, 1899, the defendant has been renting the building for a monthly rental of $75, and collecting the same and converting it to his own use; and that he has refused and still refuses to account to the plaintiff for his share, or $37.50, per month, though repeated demands have been made upon him by the plaintiff to do so.

It is further alleged that on or about January 1, 1898, the defendant entered upon another portion of said lot toward the north, and erected and constructed thereon another building, which he occupied and still occupies exclusively as a residence; that this building was erected without the consent of the plaintiff; that the defendant, though often requested, has refused and still refuses to pay the plaintiff for the reasonable use and occupation of his interest in the ground occupied by said building, which is $10 per month; that plaintiff is the owner of two small buildings situate on the southerly portion of said lot, one of which he occupies as a residence, and the other he rents to tenants, but that plaintiff has always been, and still is, ready and willing to account for and pay to the defendant his share of the reasonable value of the use of that portion of the lot occupied by these buildings; that there are a blacksmith-shop and a stable upon the central portion of said lot, which the plaintiff and defendant jointly rent to tenants, dividing the rents equally between them, but that the property in the possession of the defendant is claimed by him absolutely, he asserting the right to collect the rents thereof and reserve them to his own use.

It is further alleged, by way of amendment and supplement to the complaint, that since the bringing of this action the defendant has entered upon the eastern portion of said lot and erected thereon a building which he has used for his own profit

and has rented to different persons, collecting and appropriating the rent thereof to his own use and benefit; that the use of such portion of the lot since the erection of said building has been of the reasonable value of $10 per month, but that defendant has paid plaintiff no part thereof. Demand is made that the plaintiff have judgment that he is the owner of a one-half interest in the saloon building, and that he recover one-half of the rents of the same, and that by the final judgment the rents of all the property be divided equally between the plaintiff and defendant.

The defendant admits the tenancy in common in the lot described; that on or about January 1, 1897, he entered thereon and erected the saloon building as alleged, and for the purpose alleged; that he has refused to pay to the plaintiff the share in the rents thereof for which he alleges a claim, for the reason that the same was erected at defendant's own expense, and that the plaintiff has no interest therein; that on or about January 1, 1898, the defendant entered upon another portion of the lot on the north end thereof and erected a residence, which he has still in his exclusive possession; that he refuses to pay the plaintiff, or any other person, the sum of $10 per month, or any other sum, as rent for the ground occupied by this building; that there is a blacksmith-shop and stable on the central portion of the lot, but averring that the defendant occupies the same under an agreement made with the plaintiff at the time the saloon building was erected; and that there is a building on the eastern portion of the lot which has been used by defendant for his own purposes and rented to other persons, the rents therefor being collected and used as his own. He denies that he erected the saloon building under the agreement alleged in the complaint, or any agreement, or that he has collected rent therefor to exceed the sum of $50 per month, or that the cost of erection was not to exceed $500, and alleges such cost to have been $1,000 or thereabouts; that the reasonable value of the land occupied by his residence is $10, or any other or greater sum that $2.50, per month; and that the value of the

rent for the ground occupied by the building on the eastern portion of the lot is $10, or any greater sum than $1, per month.

It is alleged affirmatively that the said buildings were erected on the lot with the knowledge and approval and consent of the plaintiff and that it was agreed that plaintiff should neither have nor claim any interest therein or rents or profits thereof; that relying upon the promise of the plaintiff not to charge him any rent for his, plaintiff's, interest in said ground other than the sum of $10 per month, which the defendant agreed to pay plaintiff for his interest in the ground occupied by the stable and blacksmith-shop and certain other portions thereof, upon which defendant intended to build the saloon and residence referred to in the complaint, the defendant erected said buildings, it being mutually agreed that the defendant should not be required to pay any ground rent for the portions of the land occupied by them, except the sum of $10, which it was agreed was all the rent the defendant should pay; and that it was further agreed that, in consideration of the fact that plaintiff should not claim any other rent than the $10 so promised as aforesaid, the plaintiff should have free use and enjoyment of the portion of the joint property occupied by him. All other allegations of the complaint are denied generally. Issue is joined by replication upon the affirmative allegations of the answer.

The controversy was submitted to a jury, which rendered a general verdict for plaintiff for $800, and judgment was entered accordingly. The defendant has appealed from an order denying him a new trial.

*Mr. John J. McHatton,* for Respondent.

To establish that the complaint states a cause of action; that there was no error in admitting evidence, and that the finding and verdict of the jury in this case should be sustained, we need only call attention to the statute and decisions: Code of Civil Proc., sec. 592, Laws Sixth Session, p. 134;

*Anaconda Cop. Min. Co.* v. *Butte & Boston Min. Co.,* 17 Mont. 519, 43 Pac. 924; *Butte & Boston Con. Min. Co.* v. *Montana Ore Pur. Co.,* 25 Mont. 41, 63 Pac. 825; *Harrigan* v. *Lynch,* 21 Mont. 36, 52 Pac. 642; *Butte & Boston Con. Min. Co.* v. *Montana Ore. Pur. Co.,* 24 Mont. 125, 60 Pac. 1039. The exclusive occupation and use of the common property, or any part of it, constituted at common law an assertion of ownership, which would render the occupying cotenant responsible for rents or profits, use or occupation to the complaining cotenant, and amounted to an ouster, for which he could maintain his action. (See above case and cases cited, and *Byam* v. *Bickford,* 140 Mass. 31, 2 N. E. 687.) *Pico* v. *Columbet,* 12 Cal. 414, 73 Am. Dec. 550, is relied upon by appellant. That case is explained and distinguished in *Goodenow* v. *Ewer,* 16 Cal. 461, 471, 76 Am. Dec. 540, and in *Abel* v. *Love,* 17 Cal. 233, 237. (See, also, *Howard* v. *Throckmorton,* 59 Cal. 79, 86.) Even where there is no ouster by one cotenant of another, he must account for rents received. (*Humphries* v. *Davis,* 100 Ind. 369; *Reynolds* v. *Wilmeth,* 45 Iowa, 693; *Israel* v. *Israel,* 30 Md. 120, 96 Am. Dec. 571.) In the latter case, it is held that an occupant is not entitled to an allowance for expenditures made for his own convenience.

An action in equity is a proper remedy where one tenant has taken the rents and profits, or had the use and occupation of the common property to the exclusion of the other. (11 Am. & Eng. Ency. of Law, 1st ed., p. 1131, note 2; *Ward* v. *Ward,* 40 W. Va. 611, 52 Am. St. Rep. 911, 21 S. E. 746, 29 L. R. A. 449; *Gage* v. *Gage,* 66 N. H. 282, 29 Atl. 543, 28 L. R. A. 829.) Appellant was only entitled to make necessary repairs and improvements to protect the property without consulting the respondent. (*Goodenow* v. *Ewer,* 16 Cal. 461, 76 Am. Dec. 540; *Bateman* v. *Raymond,* 15 Mont. 439, 39 Pac. 520.) In an action to compel an accounting for ores removed, the defendant may be required to account for all ores removed. (*Zickler* v. *Deegan,* 16 Mont. 198, 40 Pac. 410; *McIntosh* v. *Perkins,* 13 Mont. 143, 32 Pac. 653; *Hagar* v. *Whitmore,* 82 Me. 248, 19 Atl. 444, 448.)

Whatever amounts to an exclusive claim or exclusive use and occupancy of a portion of the common property, amounts to an adverse claim or ouster; and where improvements are made upon property by a party in this position, he is entitled to no credit therefor, for between cotenants, contribution can be compelled only for necessary repairs. (*Stevens* v. *Thompson,* 17 N. H. 110; *Rico Red. & Min. Co.* v. *Musgrave,* 14 Colo. 79, 23 Pac. 458; 11 Am. & Eng. Ency. of Law, 1st ed., pp. 1104, 1105; Lindley on Mines, sec. 790, p. 989.) And when one cotenant disseises another, he cannot have contribution. (*Austin* v. *Barrett,* 44 Iowa, 488; *Mumford* v. *Brown,* 6 Cow. (N. Y.) 475, 16 Am. Dec. 440; *Doane* v. *Badger,* 12 Mass. 65; *Dech's Appeal,* 57 Pa. St. 467.) Wherever there has been an ouster, the cotenant ousted has his right, even under the common law, to an account for rent or for value of the use and occupation. (17 Am. & Eng. Ency. of Law, 2d ed., pp. 691, 694, and cases cited in notes.) In this case, so far as the portion of the common premises occupied by the appellant's residence is concerned, an ouster in fact is shown against the respondent.

The appellant had the burden of proof to show that the building cost more than $500 and that his statement theretofore made to the respondent with reference to the cost of the same was not correct. The cost of the building was peculiarly within his own knowledge. The fact that he may not have possessed this knowledge does not change the rule, since he should have possessed it and could not shift the burden on the plaintiff. (Code of Civil Proc., sec. 3390, subd. 7.) A party claiming a credit or deduction must always establish the same. (*Colorado etc. Min. Co.* v. *Turck,* 70 Fed. 295; St. *Clair* v. *Cash Gold M. & M. Co.,* 9 Colo. App. 235, 47 Pac. 466; *Little Pittsburg Con. Min. Co.* v. *Little Chief Con. Min. Co.,* 11 Colo. 223, 7 Am. St. Rep. 226, 17 Pac. 760; Lindley on Mines, sec. 868.) The circumstances placed the burden of proof on the defendant.

*Mr. L. P. Forrestell,* for Appellant.

Each tenant in common has the right to enter upon and hold exclusive possession of the common property, and to make such profit as he can by the proper cultivation or use thereof, and to retain the whole of the benefits derived from such cultivation or use, provided that, in keeping the possession and in making the profits, he has not been guilty of an ouster of his cotenant, or hindered him from entering upon the premises and enjoying them as he had a right to do. (Freeman on Cotenancy and Partition, secs. 258, 286, and cases cited; *Newbold* v. *Smart,* 67 Ala. 326; *Terrell* v. *Cunningham,* 70 Ala. 100; *Scantlin* v. *Allison,* 32 Kan. 376, 4 Pac. 618; *Chapin* v. *Foss,* 75 Ill. 280; *Sconce* v. *Sconce,* 15 Ill. App. 169; *Crane* v. *Waggoner,* 27 Ind. 52, 89 Am. Dec. 493; *Sears* v. *Sellew,* 28 Iowa, 505; *Reynolds* v. *Wilmeth,* 45 Iowa, 693; *Varnum* v. *Leek,* 65 Iowa, 751, 23 N. W. 151, 152; *Van Ormer* v. *Harley,* 102 Iowa, 150, 71 N. W. 241; *Israel* v. *Israel,* 30 Md. 124, 96 Am. Dec. 571; *Boley* v. *Barutio,* 120 Ill. 192, 11 N. E. 393; *Crane* v. *Waggoner,* 27 Ind. 52, 89 Am. Dec. 493; *McCaw* v. *Barker,* 115 Ala. 543, 22 South. 131; *Hamby* v. *Wall,* 48 Ark. 135, 3 Am. St. Rep. 218, 2 S. W. 705; *Everts* v. *Beach,* 31 Mich. 136, 18 Am. Rep. 169, 17 Am. & Eng. Ency. of Law, 2d ed., 690, 699, and cases cited in notes thereto.) The assumption and exercise of exclusive ownership over common property means something more than the sole, silent occupation by one cotenant of the entire property. It means a denial of the title of his cotenant; an assumption of absolute ownership, which excludes the ownership of his companion; an adverse claim of sole and exclusive right by one against the other.

To say that the defendant had a right to enter upon, occupy and use the whole or any part of the common property, and without any showing whatever that plaintiff has been denied the right to do likewise, to charge defendant for use and occupation, is to assume that a wrong has been committed and to destroy the presumption which attaches to the possession of tenants in common, without any allegation and without any

evidence; it is equivalent to asserting that there is a remedy where there is no wrong. (*Alexander* v. *Kennedy*, 19 Tex 488, 70 Am. Dec. 358; *Prescott* v. *Veners*, 4 Mason, 326-331, Fed. Cas. No. 11,390; *Corwin* v. *Davidson*, 9 Cow. 24; *Peck* v. *Carpenter*, 7 Gray, 283, 66 Am. Dec. 477; *Izard* v. *Bodine*, 9 N. J. Eq. 309; *Sargent* v. *Parsons*, 12 Mass. 149; *Crane* v. *Waggoner*, 27 Ind. 52, 89 Am. Dec. 493; *Holmes* v. *Williams*, 16 Minn. 164; *Woolever* v. *Knapp*, 18 Barb. 265; *Everts* v. *Beach*, 31 Mich. 136, 18 Am. Rep. 169; *Burns* v. *Byrne*, 45 Iowa, 287; *Belknap* v. *Belknap*, 77 Iowa, 71, 41 N. W. 568; *Lawton* v. *Adams*, 29 Ga. 273, 74 Am. Dec. 59; *Hamby* v. *Wall*, 48 Ark. 135, 3 Am. St. Rep. 218, 2 S. W. 705; *Sailer* v. *Sailer*, 41 N. J. Eq. 398, 5 Atl. 319; *Hause* v. *Hause*, 29 Minn. 252, 13 N. W. 43; *Rich* v. *Rich*, 50 Hun, 199, 2 N. Y. Supp. 770; *Busch* v. *Huston*, 75 Ill. 343; *Clymer* v. *Dawkins*, 44 U. S. (3 How.) 674, 11 L. Ed. 778; *Cooey* v. *Porter*, 22 W. Va. 120; *Challefaux* v. *Ducharme*, 4 Wis. 554; *Comer* v. *Comer*, 119 Ill. 170, 8 N. E. 796; *Todd* v. *Todd*, 117 Ill. 92, 7 N. E. 583; *Swartwout* v. *Evans*, 37 Ill. 442; *Small* v. *Clifford*, 38 Me. 213.)

An action for "use and occupation of real property" cannot be predicated upon an entry without the consent of the plaintiff, from such an entry there can be no implication of a contract to pay rent, and the relation of landlord and tenant will not be implied from mere occupation, or a holding without the consent of the plaintiff. (*Dixon* v. *Ahern*, 19 Nev. 422, 14 Pac. 599, and cases cited; Gear on Landlord and Tenant, sec. 150, p. 561; also footnote No. 28 to same; 1 Boone on Real Property, sec. 110, p. 291; *Smith* v. *Stewart*, 6 Johns. 49, 5 Am. Dec. 186; *Bancroft* v. *Wardell*, 13 Johns. 489, 7 Am. Dec. 396; *Edmonson* v. *Kite*, 43 Mo. 178; *McClosky* v. *Miller*, 72 Pa. St. 154; *Espy* v. *Fenton*, 5 Or. 423; *Lankford* v. *Green*, 52 Ala. 103; *Hathaway* v. *Ryan*, 35 Cal. 194; *Sampson* v. *Schaeffer*, 3 Cal. 196; *Warnock* v. *Harlow*, 96 Cal. 298, 31 Am. St. Rep. 209, 31 Pac. 166; *Lloyd* v. *Hough*, 1 How. 153, 11 L. Ed. 83; *Carpenter* v. *United States*, 17 Wall. 489;

21 L. Ed. 681; *Wiggins Ferry Co.* v. *Ohio & Miss. Ry. Co.,* 142 U. S. 396, 12 Sup. Ct. 188, 35 L. Ed. 1059; 1 Taylor's Landlord and Tenant, 8th ed., sec. 19; 1 Estey's Pleading, sec. 952.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

1. The contention is made by appellant that the complaint does not state a cause of action. Respondent argues that this contention presents a question which cannot be determined upon this appeal. The sufficiency of a pleading will not ordinarily be examined on the motion for a new trial, nor on appeal from an order disposing of it, because the motion presents for review only rulings made during the progress of the trial. Rulings made prior to trial are reviewable on appeal from the judgment. (*Scherrer* v. *Hale,* 9 Mont. 63, 22 Pac. 151; *Powder River Cattle Co.* v. *Commissioners of Custer Co.,* 9 Mont. 145, 22 Pac. 383.) An exception to this rule is recognized, however, when the sufficiency of the pleading is challenged during the progress of the trial by objection to the introduction of evidence on the ground of want of substantial allegations therein, or other appropriate method. (*Campbell* v. *Great Falls,* 27 Mont. 37, 69 Pac. 114; *Alpers* v. *Hunt,* 86 Cal. 78, 21 Am. St. Rep. 17, 24 Pac. 846, 9 L. R. A. 483; Hayne on New Trial and Appeal, sec. 1; Spelling on New Trial and Appellate Practice, sec. 388.) At the outset of the trial of this case appellant objected to the introduction of evidence by the plaintiff on the ground that the complaint does not state a cause of action; the court overruled the objection; the appellant brings himself within the recognized exception, and is entitled to the judgment of this court upon the correctness of this ruling.

The complaint presents a double aspect. In the first portion of it plaintiff seeks to recover on an express contract, under the terms of which there is alleged to be due him the sum of $37.50 per month since February 1, 1899. He also asks

to be declared the owner of one-half of the saloon building. Then follow allegations setting forth, as ground for additional recovery, the occupation and use by defendant of the other portions of the common property without consent of the plaintiff. Two causes of action are therefore blended, whereas they should have been separately stated.   (Code of Civil Proc., sec. 672.) No objection was made to the pleadings on this ground, however, and this feature of it may be passed without further notice.

The objections upon which appellant relies are, that there is alleged no agreement by defendant to pay rent, nor any statement of facts from which it appears that defendant has ousted the plaintiff, or has assumed and exercised exclusive ownership over, or has destroyed, lessened in value, or otherwise injured the common property so as to give the plaintiff any ground of action, and that no demand for an accounting is alleged.

The respondent in his brief designates this action as one in equity for an accounting.   This designation does not determine its character.   This must be determined by the kind of relief to which the allegations show him to be entitled.   Passing for a moment the allegations touching the express contract with reference to the saloon building, the question arises: Under what circumstances may one cotenant maintain an action against one or more of his cotenants for an accounting for the use and occupation of the real estate owned in common ?

The rule at the common law was that, where one cotenant occupied the common property and took the whole profit, the other had no cause of action against him unless the acts of the occupant amounted to an ouster of his companion, or unless the occupant held under an agreement by which he became bailiff for the other as to his share.   In the one case, ejectment lay in favor of the ousted cotenant to admit him into joint possession; in the other, he had his action of account for his share of the rents and profits, just as against a bailiff in charge of an estate which the plaintiff owned in the entirety.   The lack of any suitable means of redress, when one cotenant had received

more than his share· of the rents and profits, led to the enactment of the statute of Anne (4 & 5 Anne, c. XVI.) Under its provisions, one cotenant became the bailiff of the other by receiving more than his share, and could be called to account; but, as interpreted by the courts of England, he could be held to account only when he received more than his share from another person. When he occupied and cultivated the land himself, the products were held to be the fruits of his own industry, and he could not be made to account for any part of them. (*Henderson* v. *Eason,* 1 Eng. Rul. Cas. 449.) In other respects the common-law rule remained unchanged, and no action lay in favor of the cotenant not in possession, except when ousted, or when his cotenant held as bailiff. The reason for the rule was that each cotenant was entitled to the occupation of the premises. So long as the one did not exclude the other, he was free to possess and enjoy as he pleased, because his possession was but an exercise of a legal right. He could not be deprived of this legal right by the caprice or indolence of his cotenant. This the law did not tolerate, but rather lent support to the notion that when the one refused to occupy and enjoy he thereby, for the time, at least, relinquished all right to the other. (*Hopkins* v. *Noyes,* 4 Mont. 550, 2 Pac. 280; *Mullins* v. *Butte Hardware Co.,* 25 Mont. 525, 87 Am. St. Rep. 430, 65 Pac. 1004; *Butte & Boston Con. M. Co.* v. *Montana Ore Pur. Co.,* 25 Mont. 41, 63 Pac. 825; *Hamby* v. *Wall,* 48 Ark. 135, 3 Am. St. Rep. 218, 2 S. W. 705; *Reynolds* v. *Wilmeth,* 45 Iowa, 693; *Pico* v. *Columbet,* 12 Cal. 414, 73 Am. Dec. 550; *Israel* v. *Israel,* 30 Md. 120, 96 Am. Dec. 571; *Everts* v. *Beach,* 31 Mich. 136, 18 Am. Rep. 169; *Hause* v. *Hause,* 29 Minn. 252, 13 N. W. 43; *Humphries* v. *Davis,* 100 Ind. 369; Freeman on Cotenancy and Partition, sec. 258.)

Neither the statute of Anne nor the common-law rule is in force in this state. Section 2 of the Act of the territorial legislature of February 8, 1865 (Bannack Statutes 1864-65, p. 454), materially modified the rights and relations of cotenants *inter sese,* and this section, with slight modifications as to rem-

edies, was incorporated into the Code of Civil Procedure of 1895 as section 592. Amendments in the form of limitations and provisos were made to it by Act of the legislature of 1899 (Session Laws 1899, p. 134); but, as these affect the substantial rights of the parties touching the common property, a consideration of them is not now pertinent, since the cotenancy here involved was created prior to their passage. (*Butte & Boston Con. M. Co.* v. *Mont. Ore Pur. Co.,* 25 Mont. 41, 63 Pac. 825.) They have no application.

The question is whether the allegations of the complaint now under consideration state a case from any view of the law. The statute declares: "Sec. 592. If any person shall assume and exercise exclusive ownership over, or take away, destroy, lessen in value or otherwise injure or abuse any property held in joint tenancy or tenancy in common, the party aggrieved shall have his action for the injury in the same manner as he would have if such joint tenancy or tenancy in common did not exist." This section has been considered several times by this court, and its application to cotenancies in mining property determined. (*Anaconda Copper M. Co.* v. *Butte & Boston M. Co.,* 17 Mont. 519, 43 Pac. 924; *Red Mountain Con. M. Co.* v. *Esler,* 18 Mont. 174, 44 Pac. 523; *Connole et al.* v. *Boston & Mont. Con. C. & S. M. Co.,* 20 Mont. 523, 52 Pac. 263; *Harrigan* v. *Lynch,* 21 Mont. 36, 52 Pac. 642; *Butte & Boston Con. M. Co.* v. *Montana Ore Pur. Co.,* 24 Mont. 125, 60 Pac. 1039; *Butte & Boston Con. M. Co.* v. *Montana Ore Pur. Co.,* 25 Mont. 41, 63 Pac. 825.) In the first three and the last one of these cases the court considered the character of the remedies which one cotenant of a mining claim could successfully invoke against another who was engaged in working it under circumstances showing the assumption and exercise of exclusive ownership amounting to an ouster, and held that the remedy of injunction was appropriate.

In *Harrigan* v. *Lynch* it was held that injunction would lie to prevent one cotenant from working the common property without the consent of the other, where he was removing ore

and using the proceeds of it to pay obligations incurred in his operations, without reference to whether the operations were profitable or enhanced the value of the claim, thus distinctly recognizing the rule that the statute renders it unlawful for one cotenant in mining property to occupy and work it, though the circumstances do not tend to show an ouster; in other words, the nonconsenting cotenant is entitled, if he so wishes, to have the property stand in its entirety until such time as there may be a partition among the parties entitled. In the last case the history, scope and purpose of the Act of 1865 was considered and determined, and the general effect of it stated. After giving a history of the legislation, and pointing out its evident purpose, this court said: "In view of this plain purpose declared in unmistakable terms in the Act, in view of the fact that this purpose could be accomplished only by modifying the relations incident to cotenancy and creating new rights in the cotenants, and in view of the avowed object of the statute as declared in its title, the conclusion cannot be escaped that the legislative assembly clearly intended by this awkwardly worded section to alter substantially the rights of cotenants, make violations of those rights constitute legal injuries, and designate the appropriate remedies for such injuries." And again: "We are of the opinion that the purpose of this section was to destroy those characteristics of tenancies in common wherein they mainly differ from holdings in severalty, leaving the necessity for voluntary or judicial partition as the chief remnant of the distinguishing features of this species of ownership; in other words, the first and second sections, which concern 'Joint Rights,' practically convert a joint tenancy into a tenancy in common, and then convert tenancy in common into an estate with many (whether with all, we need not decide) of the rights and privileges incident to several ownership, and giving the actions of trespass and trover for their protection."

The effect of this change worked by the statute in the common law is further stated as follows: "For one cotenant without the consent of the other to mine and remove ore from the

common property is an unauthorized taking away and lessen-- ing in value of the property within the meaning of the act of 1865; it is a permanent injury thereto (*Murray et al.* v. *Haverty et al.,* 70 Ill. 318; *Harrigan* v. *Lynch,* 21 Mont. 36, 52 Pac. 642), and the principle declared in the act of 1865, at least as respects cotenancies in quartz and placer mining claims, is that the common property shall remain an entirety until partition, and that no one of the owners may, without the consent of the other owners, work it or lessen its value by mining and removing the ore deposits."

Mining property differs from farm and city property in the important particular that the former is consumed by the appropriate use of it. Nevertheless, at the common law, open mines could be worked by one cotenant, who would reserve the proceeds to himself as the fruits of his own industry, without being subject to be called to account by his cotenant, so long as he did nothing amounting to an ouster or unlawful destruction of the common property. In other words, the result of these decisions is that that which was lawful for one cotenant to do with respect to mining property at the common law was, by the provisions of the act of 1865, rendered unlawful, so that his cotenant, not consenting to his act, can call him to account in the appropriate form of action; section 592, *supra,* having wrought no change except as to remedies, the scope and effect of it are the same. If this be the proper construction of the act so far as it affects mining property—and we do not see how the conclusion of this court in this regard could have been avoided—it results that, wherever one cotenant assumes and exercises acts of exclusive ownership over agricultural or city property, the same rule applies, for, to the extent that he uses the entire property as his own, to the same extent does he use the interest of his cotenant as his own.

So that, if one cotenant of a farm or of a city lot should enter into possession of it and enjoy it as his own property, he can be held accountable by his cotenant for the mere use and occupation of it; and for a much stronger reason would the

occupying cotenant become liable to an accounting at the suit of the nonoccupying cotenant where the former rents out the property to tenants and collects and appropriates the revenues from it to his own use. In such case the use of the property by the one of the cotenants would be the assumption and the exercise of the exclusive ownership over it, and his cotenant would be a party aggrieved within the meaning of the statute. For, what was lawful use of the common property at the common law in the case of mining property having been made unlawful by the statute, what was lawful use of farm or city property must be, by the same rule, deemed to be unlawful.

The general effect of the statute, then, is that, though one cotenant may not be guilty of a trespass when he enters upon the common property in order to protect and preserve it, yet if he occupies and uses it, or any part of it, as his own without the consent of his cotenant, he so far assumes and exercises exclusive ownership over it that he may be held to account in the proper action by his cotenant; and thus the necessity for voluntary or judicial partition is left as not the chief, but the only, distinguishing feature of this species of ownership, except, perhaps, the duties and liabilities of the cotenants with reference to the protection and preservation of the common title. So that an action for the reasonable value of the occupation and use may therefore be maintained by one cotenant against the other, at least as to the net profits resulting from such occupation, whether they be the result of rents received from third persons holding under one cotenant, or from profitable use by the cotenant himself. The occupant becomes the bailiff for his cotenant, and may be charged as such.

The complaint contains no allegation of a demand for a general accounting and a refusal by defendant. This is a necessary allegation. Without it, the action cannot be sustained as one for an accounting. (*Wetzstein* v. *Boston & Mon. Con. C. & S. M. Co.,* 28 Mont. 451, 72 Pac. 865.) The statute does not prescribe the form of action which may be resorted to, but leaves the plaintiff to select the one most appro-

priate. Whatever that may be, the allegations of the complaint must fulfill the requirements of the rules of pleading applicable. While this is true, there is sufficient substantial allegation to sustain the action for the recovery of rents due under the contract alleged with reference to the saloon building.

Tenants in common may contract with reference to the use of the common property. This is particularly the case under the statute, since their respective interests partake in great measure of the nature of estates in severalty. The exclusive use by one is a sufficient consideration to support his promise to pay rent at a stipulated rate. The objections to the introduction of evidence being general, and not directed to any particular allegation or paragraph of the pleading, the action of the court in overruling them was correct.

That the action is one at law is manifest, since it proceeds upon a contract and seeks recovery for a breach. In so far as the prayer asks for an adjudication of the interests of the parties in the building itself, relief may not be had in this action; for, while the result of a judgment in plaintiff's favor for a breach of the contract would indirectly adjudicate these interests, an action in ejectment would be required to determine them directly.

2. Contention is made that the court erred to the prejudice of the defendant in giving and refusing instructions. Respondent insists that the instructions may not be examined because the case is one in equity, and invokes the rule that error in giving or refusing instructions is not ground for reversal. What has heretofore been said disposes of respondent's contention. Appellant was entitled to a trial by jury as a matter of right, and the alleged errors touching the instructions are properly before this court for review. Furthermore, the cause was tried in the district court as one at law, a general verdict was had, and judgment entered thereon. It is too late now for respondent to change his ground and insist upon a different theory of the case from that upon which it proceeded in

the trial court. (*Talbott* v. *Butte City Water Co.,* 29 Mont. 17, 73 Pac. 1111, and cases cited.)

Upon the burden of proof touching the contract, the district court instructed the jury as follows: "You are instructed that in defendant's answer he denies the allegation of plaintiff's complaint that the saloon building in controversy in this action was erected and constructed by him at a cost not to exceed $500, and 'avers that said building was erected and constructed at a cost to defendant of $1,000 or thereabouts.' In this connection, you are instructed that the burden of proof is upon the defendant to establish the cost of said building, and to establish it by satisfactory evidence, as he is in possession of a knowledge of the amount of the cost of said building; and if weaker or less satisfactory evidence than the defendant could have offered is offered in this case, and if it appears that stronger or more satisfactory evidence was within his power, and could have been offered had he so desired, you are instructed to view the weaker evidence with distrust."

The burden was upon the plaintiff to establish the contract as well as the breach of it. Otherwise he could not recover. It therefore devolved upon him, after *prima facie* proof of the contract, to show that the building cost not to exceed the sum stated, or such other sum, though greater, as had already been discharged by the rents already accrued at the rate of $20 per month; in other words, the answer put in issue the allegations of the complaint, and the burden was on the plaintiff to show that the defendant had been reimbursed for one-half of the cost of construction by the plaintiff's share of the accrued rents. This was necessary, otherwise no breach of the contract was shown. When this appeared by *prima facie* proof, the burden shifted to the defendant to rebut it. This he might do by evidence tending to show that no such contract was made, or that the building cost more than the plaintiff's evidence tended to show, and that the plaintiff was therefore entitled to recover nothing, because the defendant had not yet been reimbursed; or, further, that, though something might be due under the

contract, still it was much less than the sum claimed. An equipoise in the evidence upon any of these points would have been to defendant's advantage.

The instruction, therefore, is open to the criticism made by appellant as being prejudicial. It virtually said to the jury: "If the evidence satisfies you that the plaintiff and defendant entered into the contract alleged, the plaintiff is entitled to recover the amount claimed, unless the defendant satisfies you by a clear preponderance of the evidence that the building cost more than the amount alleged by plaintiff"; whereas the plaintiff could not recover without making at least *prima facie* proof of each material allegation of his pleading. Whether the circumstances were such as to warrant the direction to the jury to distrust defendant's evidence, on the ground that he had not presented other and more satisfactory evidence than he did, is a question not before us, as no criticism is offered on that ground. For the error in this instruction, a new trial must be granted.

It will not be necessary to examine in detail the other instructions given or refused. What has already been said disposes of the contention of the parties with reference to them. It may be said generally that some of those given speak of the property in controversy as though the title to the whole lot of land were in dispute, whereas the only issues properly before the court were as to the right to recover on the contract. Upon another trial these references should be omitted, as they are likely to confuse the jury by directing attention to a matter assumed to be at issue in the case, whereas in fact it is not. That plaintiff and defendant were tenants in common was not in dispute.

3. Many errors are assigned upon rulings of the court in admitting and excluding evidence. We shall notice only two of these. On cross-examination of the plaintiff, counsel for defendant asked him if the contract with reference to the saloon building, or any note or memorandum of it, was in writing. Upon objection, the evidence sought was excluded. The ap-

parent purpose of the question was to bring out evidence show-
ing that the contract was oral, and therefore void under the
provisions of sections 2340, 2342 and 2185 of the Civil Code.
This point is made by appellant, and also the point that, even
if the provisions of the statute do not apply, the question was
proper as reflecting light upon the real controversy, and that the
right of cross-examination was by the ruling unnecessarily re-
stricted. The question was not at all pertinent, unless the
evidence was intended to show that the contract was within
the statute. It did not upon any other theory seek evidence
that would in any wise contradict or impeach the plaintiff or
shed any light upon the issues before the court. Its pertin-
ency depends upon whether the contract, if oral, falls within
the rule of the sections cited.

Sections 2340 and 2342 have no application. The first has
reference to contracts for the sale of personal property. Un-
der the contract alleged, there was no agreement for the sale of
the building. It was an agreement by the defendant to erect
the building upon the joint property, at the cost of both co-
tenants, in consideration for which he was not to account until
reimbursed from the proceeds of the rent at the stipulated rate,
whereupon he was to account to the plaintiff for his share.
For a like reason, section 2342 has no application. There was
no contract for the sale of land, nor for any interest therein.

Section 2185 declares that "an agreement that by its terms
is not to be performed within a year from the making thereof
is invalid," unless it be in writing and subscribed by the party
to be charged, or his agent. (Subdivision 1.) It also de-
clares that "an agreement for the leasing for a longer period
than one year" is invalid, unless it is executed with like form-
alities. (Subdivision 5.) Subdivision 1, *supra,* is applicable
to those contracts only which *by their terms* are not to be per-
formed within one year by either of the parties. Therefore,
where a contract may be performed by one of the parties
within one year, the statute does not apply, especially so where
the performance has been fully carried out. Though there is

some difference in the views of the courts upon this point, the rule is supported by the weight of authority, both in this country and in England. "The meaning of the section is that no action shall be brought to recover damages in respect of the nonperformance of such contracts as are referred to in it; its design was to prevent the setting up, by means of fraud and perjury, of contracts or promises by parol, upon which parties might otherwise have been charged for their whole lives, and for that purpose it requires that certain contracts shall be evidenced only by the solemnity of writing, and has no application to actions founded upon an executed consideration." (Wood on the Statute of Frauds, sec. 279.) The text is supported by the following cases: *Donellan* v. *Read,* 3 Barn. & Adol. 899; 37 Eng. Rev. Rep. 588; *Boydell* v. *Drummond,* 11 East, 142; *Dougherty* v. *Rosenberg,* 62 Cal. 32; *Horner and Congdon Executors* v. *Frazier,* 65 Md. 1, 4 Atl. 133; *Sherman* v. *Champlain Transp. Co.,* 31 Vt. 162; *Sugett's Admr.* v. *Cason's Admr.,* 26 Mo. 221; *Smalley* v. *Greene,* 52 Iowa, 241, 35 Am. Rep. 267, 3 N. W. 78; *Zabel* v. *Schroeder,* 35 Tex. 308; *Perkins* v. *Clay,* 54 N. H. 518; *Crocker* v. *Higgins,* 7 Conn. 342; *Chittington* v. *Fowler,* 2 Root (Conn.), 387; *Pinney* v. *Pinney,* 2 Root (Conn.), 191; *Berry* v. *Doremus,* 30 N. J. L. 399; *Holloway* v. *Hampton,* 4 Mon. 415; *Wolke* v. *Fleming,* 103 Ind. 105. 53 Am. Rep. 495, 2 N. E. 325; *McClellan* v. *Sanford,* 26 Wis. 595.

The complaint alleges, not directly, indeed, but in substance, a full and immediate performance on the part of the plaintiff by his surrender to the defendant of the entire control of the property, with all revenues to be derived from it, until the stipulated rent should pay for the erection of the building together with the use of the property in the meantime by the defendant for the purposes of revenue under the agreement. The exclusive use and control is admitted by the defendant. Under these circumstances, the inquiry whether the contract was in writing was wholly an immaterial one.

Nor does subdivision 5 of the Act apply. The arrangement

between the parties did not amount to a contract for a leasing by the one party to the other. The purpose of the contract was to make profitable property which up to the time of the agreement had yielded little or no revenue. While the arrangement did not preclude the defendant from occupying the building himself and conducting a business therein, yet it seems clear that it was the intention of the parties, as manifested by plaintiff's allegations, that after its erection it should be rented to other persons, and the revenue derived therefrom, after the defendant had been fully reimbursed, equally divided between the parties, the question to be decided being, had the defendant on his part violated the agreement for failure to pay plaintiff his share?

The court admitted, over the objection of the defendant, evidence of the reasonable value of the portion of the lot occupied by defendant's residence. Under the view already stated as to the sufficiency of the complaint to state a cause of action for an accounting, this was error.

4. Considerable parts of the briefs are devoted to a discussion of the insufficiency of the evidence. It is not necessary or proper to discuss this phase of the case, beyond stating that there is no conflict touching defendant's control and use of part of the alleged property. The entire controversy turns upon whether there was a breach of the contract. The defendant contends that he was occupying it under an agreement by which he was to pay the plaintiff $10 per month for the use of all of the lot except the portion occupied by the plaintiff, this portion the plaintiff being allowed to occupy without accounting for any rent. The evidence on this issue is in conflict, and the court was justified in submitting it to the jury.

The court should have granted a new trial. Accordingly, the order is reversed, and the cause is remanded with directions that a new trial be granted.

*Reversed and remanded.*

MR. JUSTICE MILBURN and MR. JUSTICE HOLLOWAY concur.

Rehearing denied July 29, 1905.